UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
OSCAR PERALTA,                      :

            Petitioner,             :        **REPORT &**
                                             **RECOMMENDATION**
_____    :

        -against-                   :        **06 Civ. 5360 (DAB)(MHD)**

                                    :

WILLIAM CONNELLY,                   :

                                    :

            Respondent.             :
-----------------------------------x

TO THE HONORABLE DEBORAH A. BATTS, U.S.D.J.:


        Oscar Peralta has petitioned pro se, pursuant to 28 U.S.C. §
2254, for habeas corpus relief from his May 13, 2002 conviction in
the New York State Supreme Court, New York County, of one count of
Manslaughter in the First Degree under New York Penal Law § 125.20.
The court sentenced him to a determinate prison term of ten years,
which he is currently serving.


        Peralta's petition challenged his conviction on three grounds.
He asserted (1) that he had been denied his right to appellate
counsel of choice; (2) that his appellate attorney had denied him
effective assistance of counsel based on the attorney's failure to
communicate with him and his failure to challenge the sufficiency

1

of the evidence on federal constitutional grounds; and (3) that the evidence was insufficient to prove his guilt beyond a reasonable doubt. In a proposed amendment to his petition, he asks to withdraw his first two grounds and add several new grounds, incorporated by reference from his first application for a writ of error coram nobis in state court. These grounds apparently are (1) ineffective assistance of appellate counsel, based on the appellate attorney's failure to raise an ineffective-assistance claim on appeal for trial counsel's lack of preparation, refusal to offer exculpatory evidence, failure to let petitioner testify, failure to challenge the grand-jury indictment, ignorance of criminal law and failure to protect petitioner from prejudicial, speculative and false testimony and to present a defense, (2) failure by the appellate counsel and the court to provide petitioner with free trial transcripts, and (3) appellate counsel's "abandonment" of petitioner on appeal.

Respondent argues that the first two claims of the original petition are unexhausted and procedurally barred, and that these claims, as well as the third claim in the original petition, are meritless. Respondent further argues that the amendment to the petition should be permitted only to the extent that Peralta seeks to withdraw his first two claims, and should be denied to the extent that he seeks to add the claims from his first coram nobis

petition, because those claims are meritless and hence the amendment would be futile.

We conclude that Peralta's first two claims are effectively withdrawn, and that the third claim in the petition is meritless. We further conclude that the claims that petitioner seeks to add by amendment are untimely and, in any event, meritless. We accordingly recommend denial of the petition.

I. <u>Procedural History</u>

We briefly summarize the state-court proceedings as well as the proceedings in this court.

A. <u>Trial and Sentencing</u>

On November 24, 1999, a New York County grand jury returned a four-count indictment against Peralta in connection with the fatal beating on September 7, 1999 of a man named Julio Infante. The indictment charged petitioner with one count each of Manslaughter in the First Degree (N.Y. Penal Law § 125.20[1] (McKinney 2004)) and Gang Assault in the First Degree (N.Y. Penal Law § 120.07

(McKinney 2004)), as well as two counts of Murder in the Second Degree, embodying charges of depraved-indifference murder and felony murder under N.Y. Penal Law §§ 125.25[2] and [3] (McKinney 2004).[1] (Respt.'s Mem. of Law in Supp. of Answer Opposing Pet. for a Writ of <u>Habeas Corpus</u> 2.)[2] On April 8, 2002, the case proceeded to a bench trial before the Honorable Joan Sudolnik, J.S.C. (<u>Id.</u>) We summarize the facts that the evidence at trial permitted the judge to find.

On September 7, 1999, Peralta and two friends, Nestor Santos and Fernando Villanueva, were drinking beer together and decided to buy more at a deli located at 2328 Amsterdam Avenue.[3] (Trial Tr. ("Tr.") 20, 39, 57.) As they entered the deli, Julio Infante, also entering the store, bumped into Santos, who became enraged when Infante failed to say "excuse me" after Santos asked him to do so. (<u>Id.</u> at 21, 144.) The two men began to argue, but then separated

[1] The second-degree murder statute has been amended several times since petitioner was charged and convicted, but in ways insignificant for purposes of this case. N.Y. Penal Law § 125.25 (McKinney 2004 & Supp. 2007).

[2] The State dismissed the felony-murder count prior to trial. (<u>See</u> Respt.'s Mem. of Law 2.) This charge was based on the theory that Julio Infante, the victim, had been killed during the course of a robbery.

[3] The address of the store was supplied by the prosecutor. The police officer who testified, Sgt. Ranieri, stated that he did not recall the exact address but that it was located between 175th and 176th Streets on Amsterdam Avenue. (Tr. 39.)

when Infante went into the store to buy beer. (Id. at 22.) When
Infante came back outside, he began arguing with Santos again and
soon was arguing with Peralta as well. (Id. at 22-23.) Peralta then
punched Infante in the jaw, causing him to fall to the ground. (Id.
at 23.) Once Infante had fallen, Santos hit him in the head with a
beer bottle, breaking the bottle. (Id. at 24.) With Infante lying
bleeding on the ground, Peralta and Santos kicked him repeatedly in
the chest and face. (Id. at 24-25, 66-68.) Another friend who was
at the deli with the men, Ariel Malave, also known as "Peach,"
participated in kicking Infante. (Id. at 24-25.)

Villanueva, who observed the beating but did not participate
in it (id. at 62-69), began walking north on Amsterdam toward 177th
Street while his friends were still kicking Infante, and shortly
thereafter Peralta and Santos, and then Malave, followed him. (Id.
at 27, 69.)[4] Upon reaching 177th Street, they were met by Luis

---

[4] There is some inconsistency as to whether Malave was the
person with Peralta, Santos, and Villanueva at the time. On
direct examination, Villanueva testified that the three people
with him as they were walking north were Peralta, Santos and (he
thought) "Jason," presumably Jason Carpenter. (Tr. 69.) According
to Carpenter, the four men were Villanueva, Peralta, Santos, and
Malave, while Carpenter was already waiting in a bagel truck.
(Id. at 27.) Carpenter's account makes more sense in light of the
fact that Carpenter and Villanueva agree that the three men
participating in the beating were Peralta, Santos, and Malave; in
any event, for present purposes the distinction is irrelevant.

Valdez and David Rosario, who drove toward them in a bagel truck.[5] (Id. at 70.) The assailants got into the truck and drove away past the scene of the incident. (Id. at 70-71.) Despite the presence of a pay phone outside of the deli, none of these men attempted to call 911 or help Infante in any other way. (Id. at 71.)

Infante was taken to a hospital, where he was treated for multiple head injuries. (Id. at 108-11.) Following emergency surgery, he lapsed into what was effectively a comatose state and died on October 22, 1999 as a result of complications from multiple head injuries. (Id. at 112-13.)

At the conclusion of the bench trial, the court convicted petitioner of Manslaughter in the First Degree and acquitted him of all other charges. (Verdict Tr. ("V. Tr.") 2-3.) In convicting petitioner, the judge noted the facts that she had found and that the cumulative effect of these facts was that Peralta shared Santos's intent to cause serious physical injury and that Infante had died as a result of that injury. (Id. at 2-3.)

Justice Sudolnik sentenced Peralta to a determinate term of

---

[5] Valdez and Rosario, the drivers of the truck, worked for a bagel company. (Tr. 18, 20.)

ten years. (Sentencing Tr. ("S. Tr.") 19.) At the sentencing hearing, the court noted, "Clearly, I don't think the defendant set out that night to cause injury to anyone. . . . Although the surrounding circumstances demonstrate the defendant did attempt to cause serious physical injury, I'm convinced no matter how bad his conduct was that night that there was never any intent to kill." (Id.)


B. Direct Appeal and Collateral Challenges


Petitioner and his family retained Robert R. Race, Esq., Peralta's trial attorney, to represent petitioner on direct appeal as well as at trial. (Answer and App. in Opp'n to Pet. for a Writ of Habeas Corpus Ex. C at 1; Respt.'s Mem. of Law 3; Pet. Ex. A at pp. 1, 3.) Effective July 5, 2002, Race was suspended from the practice of law for three months, and his license was reinstated on November 19, 2002. (Answer in Opp'n Ex. A ¶ 3.) According to Race, he performed the bulk of the work on Peralta's appellate brief, and, with the consent of petitioner's sister following his submission of a draft to petitioner, he had Joel S. Medows, Esq. listed as petitioner's attorney on the appellate brief. (Id. ¶ 5.) Medows represented that he had notified the petitioner and his family of Race's suspension and that he had agreed to be

substituted as counsel on condition that petitioner and his family consented. (Id. ¶ 6.) He reported that he had submitted a version of his brief to petitioner -- the same version that he ultimately filed with the Appellate Division -- and that petitioner did not object to that brief. (Id.)

Medows, on behalf of Peralta, filed an appellate brief with the First Department on December 9, 2002. (Answer in Opp'n Ex. C.) In that brief, he asserted two grounds for relief: (1) that the sentence imposed was unduly harsh; and (2) that the evidence was insufficient to support Peralta's conviction because the State had not proved beyond a reasonable doubt that Peralta himself had intended to cause serious physical injury or, in the alternative, that he had shared Santos's intent to do so. (Id. at 15-30.) On December 29, 2002, following Medows's filing of the appellate brief on behalf of petitioner, Race submitted a letter to the court stating that he would be replacing Medows as the attorney orally arguing the appeal. (Answer in Opp'n Ex. D.) The State filed its responsive brief on August 28, 2003. (Answer in Opp'n Ex. E.)

On November 6, 2003, the Appellate Division affirmed Peralta's conviction. (Answer in Opp'n Ex. F); see also People v. Peralta, 1 A.D.3d 115, 767 N.Y.S.2d 70 (1st Dep't 2003). In its unanimous

opinion, the court concluded that "[t]he verdict was based on legally sufficient evidence and was not against the weight of the evidence," and that the trial court had properly exercised its sentencing discretion. Id. at 116, 767 N.Y.2d at 71. The court noted that petitioner's intent to cause serious injury could be discerned from the evidence that petitioner punched and kicked Infante multiple times, including after Infante was lying "helpless" on the ground. Id. at 116, 767 N.Y.2d at 71.

On December 1, 2003, Peralta submitted a pro se letter and supporting affidavit requesting leave to appeal to the New York Court of Appeals. (Answer in Opp'n Ex. G.) The State filed a responsive letter brief on December 17, 2003. (Answer in Opp'n Ex. H.) On January 28, 2004, the Court of Appeals denied Peralta's application. (Answer in Opp'n Ex. I); see also People v. Peralta, 1 N.Y.3d 600, 776 N.Y.S.2d 231 (2004).

At the conclusion of his direct appeal, Peralta filed a pro se application, dated November 12, 2004, for a writ of error coram nobis in the First Department.[6] (Answer in Opp'n Ex. J.) He argued,

_____

[6] In its memorandum of law in opposition to Peralta's habeas petition, the respondent dates this application as "on or about November 18, 2004." (Respt.'s Mem. of Law 4.) Nonetheless, based on an application of the prison mailbox rule, see pp. 20-21 n.16, infra, we infer that it was given to the prison officials on the

first, that he was deprived of effective assistance of appellate counsel, because his attorney had not asserted a Sixth Amendment claim on appeal. In support of this contention, Peralta criticized his attorney's performance at trial, arguing that the attorney had failed to prepare adequately for trial and displayed "artful ignorance of basic criminal law," did not object to evidence that was "seriously prejudicial and normally inadmissible" and had failed to raise meritorious issues, let petitioner testify and present a defense. Second, he argued that counsel and the court had failed to provide him with trial transcripts to aid him in preparing applications for "Post-Conviction Relief." (Answer in Opp'n Ex. J at 2-3 (¶ 4).)[7]


In asserting his ineffective-assistance claim, petitioner cited trial counsel's failure to argue that the evidence before the grand jury and before the judge at the bench trial did not support the charge of depraved-indifference murder.[8] (Id. at 3 (¶ 6).) He further noted his impression that his counsel was "very complaisant with the corrupted maneuvers by the district attorney." (Id. at 4

_____

day on which it is dated and consider it filed on that date.

[7] Peralta also raised a third argument about whether the state appellate court could review the findings of the state trial court de novo, which presumably is not relevant here.

[8] Petitioner was ultimately acquitted of this count of the indictment at trial. (V. Tr. 2.); see also p. 6, supra.

(¶ 10).) He reported that his attorney did not have him testify (id. at 10), that a forensic report that petitioner believed constituted exculpatory evidence (by observing that there was no blood on petitioner's shoes) was not introduced (id. at 14-15), that evidence of medical negligence -- apparently exculpatory -- was not introduced (id. at 3 (¶ 6)) and that counsel failed to object to what Peralta believed to be a hearsay statement as well as what he believed to be certain misrepresentations or misunderstandings by the prosecutor and the court. (Id. at 16.) He suggested, finally, that his appellate counsel -- Mr. Race -- had failed to raise this ineffective-assistance-of-counsel claim on appeal because he had also functioned as his trial attorney. (Id. at 11-13.) Petitioner also argued that his attorney's failure to provide him with a transcript -- following the Court of Appeals' denial of his request for leave to appeal but in advance of his two coram nobis applications -- constituted "abandon[ment of] his case." (Id. at 17.)

The State opposed petitioner's application, arguing (1) that appellate counsel had rendered effective assistance -- including by not raising an argument that trial counsel had been ineffective -- and that the affirmance of Peralta's conviction was based, not on the attorney's lack of skill, but on the merits of the case; and (2) that petitioner's appellate counsel did not abandon him, by not

providing him with transcripts or in any other way, as petitioner had no constitutional right to an attorney on discretionary appeal. (Answer in Opp'n Ex. K.) On April 28, 2005, the Appellate Division, First Department, denied the coram nobis application. (Answer in Opp'n Ex. L); see also People v. Peralta, 2005 N.Y. App. Div. LEXIS 4936 (1st Dep't Apr. 28, 2005).

By motion dated May 23, 2005, petitioner made an application for leave to appeal this denial. (Answer in Opp'n Ex. M.) In his application, petitioner raised, for the first time, a claim that Race had denied him his right to counsel of his choice when Medows was allegedly substituted for Race, without petitioner's consent, during the preparation and submission of the appellate brief. (Answer in Opp'n Ex. M, Supplementary Aff. ¶¶ 12-20.) He alleged that Race had "subcontracted" out the work to cover up the fact that he had collected money from Peralta and his family to handle Peralta's appeal without notifying the court that had appointed him to handle the trial, a circumstance that Peralta considered to be "highly unethical." (Id. ¶ 14.) The Court of Appeals denied leave to appeal on June 28, 2005. (Answer in Opp'n Ex. N); see also People v. Peralta, 5 N.Y.3d 767, 801 N.Y.S.2d 261 (2005).

On or about July 27, 2005, petitioner filed a second pro se coram nobis application. The arguments he raised were (1) that he

had been denied his right to counsel of his choice by the allegedly unauthorized substitution of Medows for Race (Answer in Opp'n Ex. O at p. 1 & Aff. ¶¶ 16-18); and (2) that Medows had provided ineffective legal assistance because he failed to meet with petitioner, failed to write to petitioner to let him know that he was now counsel of record, failed to raise a legal-insufficiency claim (specifically, as to the court's assessment of shared intent and the victim's cause of death) and failed to frame his weight-of-the-evidence and legal-insufficiency claims as federal constitutional claims. (Id. at p. 1 & ¶¶ 19-28.)

In response, the State argued, first, that the court should exercise its discretion to refuse to review this second petition, as Peralta was raising issues that he could have raised in his first coram nobis petition but had not, and that Peralta offered no reason for failing to do so. (Answer in Opp'n Ex. P at 6.) In the alternative, the State asserted that Peralta's contentions were meritless, because Race's decision to hand over the preparation of Peralta's appellate brief to Medows was not improper[9] and, in any

_____

[9] The State supported this assertion by noting that Peralta himself contended that the draft brief that he received from Race and the brief that was ultimately filed by Medows were essentially identical. (Answer in Opp'n Ex. P at 10-11.) It also noted that petitioner had numerous occasions on which to learn that Medows had replaced Race as the attorney of record and that he never protested that replacement. (Id. at 10-12.)

event, Medows's representation did not constitute ineffective assistance of counsel and therefore did not deny Peralta his right to counsel. (Id. at 7-17.) Peralta replied to this filing in a submission dated October 21, 2005, largely reiterating his original arguments. (Answer in Opp'n Ex. Q.)

On February 2, 2006, the Appellate Division issued an order that treated Peralta's second coram nobis petition as a motion for re-argument of the first petition, and denied his application. (Answer in Opp'n Ex. R); see also People v. Peralta, 2006 N.Y. App. Div. LEXIS 1771 (1st Dep't Feb. 2, 2006). Petitioner applied for leave to appeal to the Court of Appeals (Answer in Opp'n Ex. S), which denied that request on May 9, 2006. (Answer in Opp'n Ex. T.)

C. Proceedings in this Court

Rebuffed in state court, Peralta filed the present petition, dated February 8, 2006, in this Court. In it, he claimed that he was denied his right to counsel of choice because Race had substituted Medows as counsel of record on the appellate brief. (Pet. Ex. A at pp. 1-3.) He also argued that Medows had provided ineffective assistance of counsel. (Id. at pp. 4-7.) Finally, he asserted an insufficiency-of-the-evidence claim on the ground that

the evidence failed to establish the requisite mental state and that he was therefore convicted "based on less than reasonable doubt." (Id. at pp. 7-8.)

In answering Peralta's petition, respondent first addressed his evidentiary-sufficiency claim, noting that the Appellate Division had found that Peralta had punched and kicked the victim and that these findings established the requisite intent. (Respt.'s Mem. of Law 10-11.) Respondent noted that a weight-of-the-evidence claim, to the extent that petitioner was making it, would not be cognizable on habeas review, and that to the extent that the argument was one based on lack of proof of guilt beyond a reasonable doubt, the state court had adequately found that the evidence satisfied all elements of the crime of which Peralta was convicted. (Id. at 11 n.6, 12-17.) As to Peralta's claims regarding his appellate counsel, respondent argued that these claims were unexhausted and procedurally barred and, in any event, meritless. (Id. at 18-30.)

In a filing dated March 13, 2007, petitioner moved to amend his petition.[10] In that motion, he asserted that his original

_____

[10] For reasons that are unclear at this time, petitioner's motion to amend was never docketed, though respondent's answer to that motion was.

petition was a "mixed petition," with some claims exhausted and others not, and that he wished to withdraw his first two, unexhausted, claims. (Mot. for Permission to Amend Habeas Corpus Pet. 1.) In the attached affidavit, he proposed that the petition be amended by withdrawing these two claims and changing the basis for his ineffective-assistance claim to those grounds asserted in his first <u>coram</u> <u>nobis</u> petition,[11] while retaining his third claim, based on insufficiency of the evidence. (Aff. in Supp. of Mot. to Amend Habeas Corpus Pet. ¶ 4.)[12]

In response, respondent did not oppose Peralta's request to withdraw his first two claims, so long as those claims were to be dismissed with prejudice. (Affirmation in Resp. to Petr.'s Mot. ¶ 2.) Respondent did oppose Peralta's motion to amend to the extent that the motion sought to add the ineffective-assistance grounds

---

[11] Peralta apparently also requests that his petition be amended to the extent that he replaces his legal arguments in Exhibit A to his habeas corpus petition with his memorandum of law, presumably from his first application for a writ of error <u>coram</u> <u>nobis</u> and, it seems, Point 3 of Exhibit A only. (Aff. in Supp. of Mot. to Amend ¶ 4(a)-(b), (e).) It is not entirely clear from his motion to which memorandum of law he is referring, but taking all inferences in favor of petitioner, we consider all legal arguments made in his first application for the writ and any legal argument made in his <u>habeas</u> petition related to his third ground for relief. In any event, as noted <u>infra</u>, respondents did not oppose the substitution.

[12] Peralta also requested permission to change respondent's name, as he has been transferred to a new facility. (<u>Id.</u> ¶ 4(f).) Respondent did not oppose this request.

raised in his first <u>coram</u> <u>nobis</u> petition. Respondent argued that the claims that Peralta complained about appellate counsel not asserting could not have resulted in relief and hence the amendment would be futile. (<u>Id.</u> ¶¶ 2, 4-6.) Respondent finally noted that he did not oppose the retention of Peralta's third ground or Peralta's efforts to replace his previously-filed Exhibit A with his memorandum of law. (<u>Id.</u> ¶ 7.)

## II. <u>Analysis</u>

Because petitioner has sought to amend, we first address that motion and then address the merits of any surviving claims.

### A. <u>The Proposed Amendments</u>

As an initial matter, petitioner's request that his first two grounds be withdrawn is unopposed by respondent. Thus, we recommend that petitioner's request to amend this portion of his petition be granted and that these two claims be dismissed with prejudice. Moreover, petitioner's request that his third ground be retained in his amended petition is also unopposed by respondent, as is his request for substitution of his memorandum of law and of the name of respondent. Thus, we recommend that petitioner's requests to

amend as to these portions of the petition be granted.


Petitioner's request to add to his petition the grounds for the ineffective-assistance-of-counsel claim asserted in his first coram nobis petition is opposed by respondent as futile. Before we reach this argument, however, we consider the timeliness of such amendments under the statute of limitations imposed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1213 ("AEDPA").[13]


B. Timeliness of Proposed Amendments


Petitioner's challenge to his conviction is asserted under 28 U.S.C. § 2254, which, as amended by the AEDPA, imposes a one-year statute of limitations on the filing of such applications. That time limit runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1); see also Fernandez v. Artuz, 402 F.3d 111, 112 (2d Cir. 2005) (quoting 28

---

[13] Note that the State did not raise the timeliness issue in its response to petitioner's motion. Nonetheless, we are free to raise it sua sponte. See Day v. McDonough, 547 U.S. 198, 210 (2006) ("[D]istrict courts are permitted, but not obliged to consider, sua sponte, the timeliness of a state prisoner's habeas petition.").

U.S.C. § 2244(d)(1)(A)).[14]


The statute also contains a tolling provision specifying that "[t]he time during which a properly-filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). "[The] tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run." Clark v. Stinson, 214 F.3d 315, 319 (2d Cir. 2000) (internal quotation marks omitted) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)).

---

[14] The statute provides three other alternatives to mark the commencement of the limitations period. The first is the "date on which the impediment to making a motion created by State action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). The second is the "date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). The third is the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Clearly, none of these alternative dates applies in this case. Petitioner alleges no governmental impediments, nor are any suggested by his recitation of the facts. None of the theories he raises are newly-recognized rights. Finally, all of the claims he raises had been asserted already at the appellate or coram nobis phases prior to the close of the limitations period, and hence do not rest on newly-discovered facts.

1. <u>Timeliness of Original Petition</u>

In the present case, Peralta's conviction was affirmed by the Appellate Division on November 6, 2003. <u>Peralta</u>, 1 A.D.3d 115, 767 N.Y.S.2d 70. The New York Court of Appeals denied leave to appeal on January 28, 2004. <u>Peralta</u>, 1 N.Y.3d 600, 776 N.Y.S.2d 231. Petitioner's conviction became final ninety days thereafter, on April 27, 2004, since petitioner would have had ninety days to petition for a writ of certiorari from the United States Supreme Court, irrespective of his decision not to do so. <u>See</u> <u>Fernandez</u>, 402 F.3d at 112.[15] The AEDPA limitations period thus began to run on April 27, 2004. <u>See</u> 28 U.S.C. § 2244(d)(1).

The limitations period was tolled beginning on November 12, 2004, when Peralta filed his first application for a writ of error <u>coram</u> <u>nobis</u>.[16] <u>See</u> <u>Hizbullahankhamon v. Walker</u>, 255 F.3d 65, 69 (2d

---

[15] The Supreme Court's recent decision in <u>Lawrence v. Florida</u>, 127 S. Ct. 1079 (2007), finding that the limitations period is not stayed under § 2244(d)(2) while a certiorari petition is pending, does not alter this rule. <u>See</u> <u>id.</u> at 1083-84.

[16] Petitioner signed and dated his motion on November 12, 2004. We therefore infer that he handed it to his jailers on that date, and under the prison-mailbox rule he is deemed to have filed it at that time. <u>See</u> <u>Fernandez</u>, 402 F.3d at 113-14 (citing, <u>inter</u> <u>alia</u>, <u>Houston v. Lack</u>, 487 U.S. 266, 270 (1988)). Respondent dates this motion as "on or about" November 18, 2004, but gives no indication as to how he arrived at that date. <u>See</u> p. 9 n.6, <u>supra</u>; (<u>see</u> <u>also</u> Respt.'s Mem. of Law 4). We take the

Cir. 2001). By this time, 199 days had passed from the date on which the judgment became final. The Appellate Division denied the writ on April 28, 2005, and the Court of Appeals denied petitioner leave to appeal on June 28, 2005.[17] The limitations period began to

---

above approach for the remainder of this report and recommendation, deeming petitioner's papers to have been filed as of the date on which they were signed and dated. See Fernandez, 402 F.3d at 113-14 (applying this rule to both direct-appeal filings and habeas petitions).

[17] Until 2002, New York Criminal Procedure Law did not give the Court of Appeals the authority to review Appellate Division denials of applications for coram nobis. See Mathieu v. Giambruno, 2008 WL 383509, at *9 n.9 (S.D.N.Y. Feb. 11, 2008) (citing Hizbullahankhamon, 255 F.3d at 70-72). The Criminal Procedure Law has since been amended, effective November 1, 2002. See 2002 N.Y. Laws ch. 498 (amending N.Y. Crim. Proc. L. § 450.90); see also, e.g., People v. Stultz, 2 N.Y.3d 277, 281, 778 N.Y.S.2d 431, 433 (2004) (Court of Appeals granting leave to appeal the Appellate Division's denial of a coram nobis application and discussing the statutory amendment). Peralta's coram nobis petition was filed in 2004, long after this amendment became effective. Therefore, it is appropriate to toll the AEDPA statute of limitations until leave to appeal was denied by the Court of Appeals. See, e.g., Dupont v. Phillips, 2006 WL 1455462, at *2 (E.D.N.Y. May 22, 2006).

While the Second Circuit has not definitively addressed the issue, it appears from the Circuit's decision in Hizbullahankhamon, 255 F.3d 65, that one might be able to toll the limitations period during the time permitted to make an application for re-argument, which must be done within 30 days. See id. at 72-73. This is theoretically relevant in this case, as it appears that the Appellate Division construed Peralta's second coram nobis application as an application for re-argument. Nonetheless, the fact that the habeas petition itself was filed in a timely manner, even without such tolling, makes this issue irrelevant from the perspective of timeliness of the original petition. Moreover, it is not relevant to the timeliness of the amendment, as the motion to amend this habeas petition was filed more than thirty days outside of the limitations period, and therefore the amendment would be untimely if relation-back does not apply, even if the limitations period had been tolled for the

run again on that date and was tolled again on July 27, 2005, when petitioner filed his second coram nobis application, twenty-nine days later. See id. at 69 (observing that the limitations period was tolled for a first coram nobis application and began to run again until the second coram nobis application was filed, at which time it was tolled again); Dupont, 2006 WL 1455462, at *2 (same). The second coram nobis application was denied by the Appellate Division on February 2, 2006. The Court of Appeals denied petitioner's application for leave to appeal on May 9, 2006, actually postdating Peralta's filing of his habeas petition in this court, on February 8, 2006. At that time, the limitations period had run for 228 days, which is within the period prescribed by the AEDPA.[18] Thus, the petition itself is timely.

_____

extra thirty days. See pp. 24-34, infra.

[18] At least one court within the Second Circuit has found that a collateral state challenge to a conviction tolls the AEDPA limitations period even if the grounds of the collateral state challenge are different from the grounds asserted in the habeas petition. See Kearse v. Walker, 123 F. Supp. 2d 652, 656 (E.D.N.Y. 2000) (citing Blasi v. Attorney Gen. of the Commonwealth of Pa., 30 F. Supp. 2d 481 (M.D.Pa. 1998)). The theory is that the statutory language of § 2244(d)(1), "the pertinent judgment or claim" (emphasis added), suggests that the post-conviction proceeding referenced can be challenging "either the specific claim or the underlying conviction." Kearse, 123 F. Supp. 2d at 656. Since respondent has not made a timeliness argument, we will assume arguendo that this approach is viable and hence view the original petition as timely, particularly since the original petition is based on grounds that were asserted in one of the two coram nobis petitions.

### 2) <u>Timeliness of Amendment</u>

The remaining questions are (1) whether the proposed amendment is independently timely and (2) if not, whether it relates back to the original, timely petition and is therefore itself timely.

### (a) <u>Independent Timeliness of Amendment</u>[19]

The Court of Appeals denied Peralta's application for leave to appeal on his final collateral state challenge on May 9, 2006, at which time the limitations period had run 228 days. Thus, Peralta had 137 days remaining on his limitations period under the AEDPA at the time that his conviction was considered final, and that period expired on September 25, 2006. Peralta filed his motion to amend on March 13, 2007. Since his motion was filed well after September 25, 2006, it is untimely unless it relates back to the time of filing of his original, timely petition.

---

[19] Equitable tolling is available in habeas cases, but is limited to "rare and exceptional" circumstances. <u>See</u> <u>Smith</u>, 208 F.3d at 17. Petitioner offers no reason here why the limitations period should be tolled, so we do not undertake that analysis.

(b) <u>Relation-Back</u>

Relation-back of a proposed amendment to a habeas petition is governed by Fed. R. Civ. P. 15(c)(2), which states that an amendment may relate back to an original pleading when both the pleading and the proposed amendment arise out of the same "conduct, transaction, or occurrence." <u>See</u> <u>Mayle v. Felix</u>, 545 U.S. 644, 648-50 (2005) (applying Rule 15 to habeas petitions). The Supreme Court held in <u>Mayle</u> that a proposed amendment may relate back to a timely petition "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." <u>Id.</u> at 664. A claim will not relate back, however, to the extent that it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." <u>Id.</u> at 650. In so holding, the Court rejected a reading of the rule adopted by some of the circuits that permitted any amendment concerning the same trial, conviction or sentence as the original petition to relate back, saying that if new claims first posed in proposed amendments "could be revived simply" for that reason, the "AEDPA's limitation period would have slim significance." <u>Id.</u> at 662.

## (i) Coram Nobis/Proposed Amended Claims

In the present case, the claims that petitioner seeks to assert in his proposed amendments are those ineffective-assistance-of-counsel claims found in his first coram nobis application. In that state-court motion, petitioner complained of his appellate counsel's failure to press a Sixth-Amendment theory premised on a number of alleged failings by trial counsel. These included the trial attorney's asserted failures (1) to argue that the grand jury charge of murder in the second degree was not supported by the evidence presented; (2) to present the same argument and an argument about medical negligence to the judge during the bench trial; (3) to offer exculpatory evidence; and (4) to present a defense. In addition, he wanted his appellate attorney to challenge the trial counsel's failure to call petitioner to testify and to point out that the trial attorney was "very complaisant" with the district attorney at the Mapp/Dunaway/Wade hearings and that he had failed to "protect" petitioner from unspecified prejudicial, speculative and false testimony. Additional alleged failings of trial counsel involved his failure to object to a hearsay statement being introduced into evidence and his failure to correct a misunderstanding that the judge and prosecutor apparently had about

that statement.[20] He also asserts that trial counsel "demonstrated an ignorance of basic principle[s] of criminal law and procedure" and did not prepare adequately for trial. Peralta suggests that his appellate attorney failed to raise the argument that these circumstances constituted ineffective assistance of counsel because the attorney functioned as trial counsel as well as appellate counsel, and he asserts, in substance, that such an arrangement was a violation of his constitutional right to counsel because his attorney was unable to serve him "fully and faithfully."

In the same coram nobis application, Peralta complained about his appellate attorney's "abandon[ment] of his case" through failing to provide him with trial transcripts so that he could mount challenges to his conviction and, apparently, failing to pursue Peralta's appeal.[21]

---

[20] Peralta separately alleged that the attorney had permitted introduction of prejudicial and normally inadmissible evidence during the trial, but it seems likely that this refers either to the hearsay statement or to the claim that the attorney failed to adequately challenge evidence introduced by the prosecutor. We therefore treat this allegation along with these two existing claims.

[21] Petitioner's coram nobis application arguably also raises a claim that the court failed to provide him with transcripts. It seems unlikely, however, that this claim functions as an effective amendment. As an initial matter, in substituting the grounds of his coram nobis petition for the first two claims in his petition, he apparently incorporates only his ineffective-assistance-of-counsel claims, not any other constitutional claims. Moreover, such a claim would not relate back, as the

Peralta's timely-filed petition raised three grounds, two of which concerned his counsel's performance. The first claim was that he was denied his right to counsel of choice on appeal, which he based on the fact that another attorney was substituted as counsel of record on his appellate brief. He suggested briefly that Race "abandoned petitioner" and that he failed to prosecute the appeal as petitioner believed was required under the fee arrangement. The second claim was for ineffective assistance of appellate counsel, which petitioner based on counsel's failure to communicate with the petitioner, his failure to raise legal insufficiency as a federal constitutional issue and his failure to point out several facts -- specifically, that the medical examiner's report was changed as to the cause of death and that Infante had supposedly made a statement, which petitioner characterizes as a dying declaration, that he "was robbed and hit in the head with a bottle" -- that petitioner believed were exculpatory. (Pet. Ex. A at p. 6.)

---

original petition made no allegations about violations of his rights by the court or the court's failure to provide the transcripts. <u>See</u> <u>infra</u> pp. 28-30.

(iii) <u>Analysis</u>

In determining whether Peralta's proposed amendments may relate back to the original petition, we must determine whether, as <u>Mayle</u> requires, "the original and amended petitions state claims that are tied to a common core of operative facts." 545 U.S. at 664. The fact that Peralta bases all of these proposed new claims on an ineffective-assistance-of-counsel theory does not necessarily permit the claims in his proposed amendment to relate back. "'[I]t is not sufficient for an untimely amendment merely to assert the same general type of legal claim as in the original . . . motion;'" rather, the question is whether the facts "at issue were separated in time and type, and thus were not part of the same []conduct, transaction, or occurrence[] for purposes of relating . . . back." <u>Veal v. United States</u>, 2007 WL 3146925, at *4 (S.D.N.Y. Oct. 9, 2007) (quoting <u>Reiter v. United States</u>, 371 F. Supp. 2d 417, 423-24 (S.D.N.Y. 2005)). Therefore, we must determine whether the behavior of which petitioner complains in his proposed amendment is factually related to the behavior of which he complains in his original, timely petition. <u>See</u> <u>Mayle</u>, 545 U.S. at 661 (noting that "Habeas Corpus Rule 2(c) . . . instructs petitioners to 'specify all [available] grounds for relief' and to 'state the facts supporting each ground.' . . . Under that Rule, . . . . [e]ach separate congeries of facts supporting the grounds for

relief . . . would delineate an 'occurrence[]'"); compare, e.g., Thai v. United States, 2007 WL 13416, at *5 (E.D.N.Y. Jan. 2, 2007) (no relation-back on an ineffective-assistance-of-counsel claim where the grounds specified in the petition were that the attorney refused to let the petitioner testify and failed to appeal the issue of prosecutorial misconduct in closing statements, and the grounds specified in the proposed amendment were that counsel and petitioner had trouble communicating because of a language barrier and an acrimonious relationship and that counsel failed to interview potential witnesses), and Torres v. Girdich, 2006 WL 1230328, at *8, *11 (S.D.N.Y. May 9, 2006) (no relation-back where claim in original petition was based on failure of the court to give a limiting instruction when questioning witnesses as to methods of packaging and marketing narcotics, and claim in proposed amendment was based on an ineffective-assistance-of-counsel theory relying on counsel's failure to properly investigate, his failure to prevent the introduction of photographs, his appearance before jurors prior to voir dire and a Brady violation), with id., at *8, *11 (permitting relation-back on the ineffective-assistance claim where the basis of the claim was the attorney's failure to object to the lack of limiting instruction on the same testimony regarding the methods of packaging and marketing narcotics) and Serrano v. Burge, 2005 WL 2063765, at *4 (S.D.N.Y. Aug. 22, 2005) (permitting relation-back where the claim in the original petition was based on

the admission of a photograph into evidence at trial, and the claim in the proposed amendment was an ineffective-assistance claim based on the attorney's failure to raise this issue on direct appeal).

We first consider petitioner's claims based on his counsel's failure to appeal what he considered to be several errors made by his trial counsel. We then consider petitioner's claims based on counsel's "abandonment" of his case.

a. <u>Claims Relating to Actions of Trial Counsel</u>

Petitioner's claims regarding appellate counsel's failure to raise issues about trial counsel's performance cannot relate back to the claims he asserts in his petition. The only complaints about Peralta's trial attorney that he mentioned in his original petition involved the attorney's failure (1) to introduce an alleged change in the medical examiner's report concerning the cause of Infante's death and (2) to introduce evidence of a dying declaration by Infante (both of which petitioner considered to be exculpatory evidence). Petitioner's proposed amended claims involve completely different alleged errors by his trial lawyer. As noted, these include his failure to introduce certain exculpatory evidence, namely a forensic analysis that found no blood on his sneakers and

some unspecified evidence of medical negligence -- not the same exculpatory evidence cited in the habeas petition.

There is no reference whatsoever in the original petition to the alleged omissions, found in the proposed amendment, regarding the grand-jury charge, the failure to present a defense, Peralta's right to testify, an impeached hearsay statement or "complaisance" on Race's part in a pretrial hearing (indeed, there is no mention of the pretrial hearings at all). As to the rather conclusory, more universal statements that Peralta makes in his <u>coram</u> <u>nobis</u> application -- that Race failed to "protect" petitioner from prejudicial, speculative and false testimony, that he failed to correct certain misunderstandings by the prosecutor and the judge, that he was inadequately prepared and that he demonstrated an ignorance of basic principles of criminal law and procedure -- they are also not suggested by the petition.

Thus, Peralta's attempt to amend his petition to make these allegations part of his ineffective-assistance claim ought to fail. The new allegations do not relate back to the original petition and are untimely in the absence of relation-back.

Peralta seeks to incorporate into his petition two remaining claims. The first is his allegation that his attorney "abandoned" him by failing to prosecute his appeal. This claim is asserted both in his original petition and in his proposed amendment, with different rationales. In his proposed amendment, he insists that the payment of $10,000.00 that he made to his attorney was supposed to cover his direct appeal, including his leave application to the Court of Appeals, and he implies that counsel was required to file such an application. In his original petition, he claims that counsel abandoned his appeal by permitting Joel Medows to pursue the appeal instead of himself.

Despite the apparent similarity of the two claims, relation-back does not apply here. As with the situation in Veal, where the ineffective-assistance claims in the petition were based on strategic decisions during trial and the claims in the proposed amendment were based on conduct during pretrial negotiations, the claims here are based on "separate and distinct phases of the case" and therefore the claim in the proposed amendment does not relate back. 2007 WL 3146925, at *6. Race's decision to turn over the filing of the appellate brief to his colleague occurred before the direct appeal to the Appellate Division, while his failure to file

a leave of appeal occurred after that appeal to the Appellate Division had been decided.


Petitioner's second claim that his appellate counsel abandoned him is premised on his argument that appellate counsel failed to send him court transcripts, to which he refers directly in his <u>coram nobis</u> application but only obliquely in his petition. In the petition, Peralta says only that he requested a copy of his trial transcript from Race (without any mention of the result) and that he and his family had paid Race $1,500.00 to "obtain extra transcripts," again without mention of the result. (Pet. Ex. A at pp. 2-3.) There is no apparent assertion of a claim based on these facts in the petition. Peralta's <u>coram nobis</u> petition repeats these allegations, but then goes on to assert that counsel refused to send the transcripts and that Peralta sent a request for trial transcripts to the court as an indigent, to no avail. (Answer in Opp'n Ex. J at 7-8 (¶¶ 19-22).) In this application, he explicitly bases a claim on these failures.


Some of the relevant facts for this claim are in the original petition, and we therefore forego the issue of the timeliness of this aspect of the proposed amendment and address the question of futility based on its merits. <u>See</u> pp. 46-47, <u>infra</u>.

C. <u>The Futility Argument</u>

Respondent argues that petitioner's request to amend must be denied because "each of the claims he maintains should have been briefed by appellate counsel could not, as a matter of law, have resulted in any relief. Thus, amendment of the petition to include them would be futile." (Affirmation in Resp. to Petr.'s Mot. ¶ 3.)

Proposed amendments to habeas petitions are governed by Fed. R. Civ. P. 15(a). Generally, permission to amend under the Rule ought to be "freely given when justice so requires." <u>Id.</u> Nonetheless, "[u]ndue delay, bad faith, prejudice to the opposing party and futility of the amendment . . . generally require denial of leave to amend." <u>Morgan v. Fillion</u>, 2000 WL 235986, at *10 (S.D.N.Y. Jan. 31, 2000) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)). Specifically, "where amendment would be futile, denial of leave to amend is proper." <u>In re Tamoxifen Citrate Antitrust Litig.</u>, 466 F.3d 187, 220 (2d Cir. 2006) (citing <u>Van Buskirk v. N.Y. Times Co.</u>, 325 F.3d 87, 91-92 (2d Cir. 2003)). Amendment is futile where a complaint or petition would fail to state a claim on which relief could be granted even if leave to amend were granted. <u>See id.</u> This test applies in motions to amend in habeas cases as well as generally in civil cases. <u>See</u>, <u>e.g.</u>, <u>Alvear-Ruiz v. United States</u>, 2007 WL 3124764, at *6 (E.D.N.Y. Oct. 24, 2007) (citing the

same standard in a habeas case) (collecting cases and citing, <u>inter alia</u>, <u>Morgan</u>, 2000 WL 235986, at *10).

Petitioner's proposed amendments, while untimely (with the exception of plaintiff's denial-of-transcript claim), are also futile because they cannot succeed on the merits.

### 1. <u>Futility of Ineffective-Assistance Proposed Amendments</u>

To prevail on an ineffective-assistance-of-appellate-counsel claim, a petitioner must show both (1) that counsel was objectively unreasonable in failing to find arguable issues to appeal; in other words, "that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them;" and (2) a "reasonable probability that, but for [] counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000) (adopting the test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)). One may dispose of such a claim by finding that either of these two elements is lacking. <u>Id.</u> at 286 n.14.

In the present case, none of the claims that petitioner asserts his appellate counsel should have raised on appeal are

"nonfrivolous issues" that his appellate attorney should have raised in a merits brief. Petitioner suggests that appellate counsel should have raised an ineffective-assistance-of-trial-counsel claim based on a number of perceived errors by his trial counsel. These perceived errors, however, do not meet the standard for an ineffective-assistance claim, and therefore, failure to raise them on appeal did not constitute ineffective assistance of appellate counsel.

To state a claim for ineffective assistance of trial counsel, one must show (1) that counsel's performance was deficient; and (2) actual prejudice to the defense. <u>Strickland</u>, 466 U.S. 668. For Peralta to have had a viable ineffective-assistance claim for his appellate counsel to raise on appeal, he would have had to show that his trial counsel's conduct fell "outside a wide range of professionally competent assistance" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

Peralta's first complaint about his trial counsel's failure to oppose the grand-jury indictment on the depraved-indifference count is not a viable argument. As respondent correctly notes, such a claim is not cognizable on direct appeal in state court, and

therefore, counsel cannot have been ineffective for failing to raise it. <u>See</u> <u>People v. Martinez</u>, 257 A.D.2d 479, 480, 684 N.Y.S.2d 521, 521 (1st Dep't 1999). Moreover, Peralta could not make a successful argument that such failure substantially prejudiced his defense, because he was not convicted of the depraved-indifference count and he offers no other explanation as to possible prejudice. (<u>See</u> V. Tr. 2-3.)

As to the hearsay issue, Peralta provides no information about what the hearsay statement was or why an objection to it should have been raised. The State refers in its <u>coram</u> <u>nobis</u> opposition brief to a statement to which the prosecution presumably believed Peralta was referring -- a statement by a police officer that one of the witnesses reported to him that Peralta was the only one involved in punching and kicking Infante.[22] We cannot assess respondent's assumption on the present record without a more explicit explanation by petitioner, but Peralta's failure to provide such information is fatal to the viability of his proposed claim. <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 358 n.3 (2003) (noting that the petitioner bears the burden of proof in habeas proceedings); <u>Zappulla v. New York</u>, 391 F.3d 462, 489 n.19 (2d Cir. 2004) (same).

---

[22] Peralta refers to the statement, albeit without explanation, in paragraph 23 of his <u>coram</u> <u>nobis</u> petition.

In any event, Peralta would still have to prove that his counsel's decision was outside the range of professionally competent assistance and that the outcome of the trial likely would have been different had counsel objected to the statement. Based on the witness statement that respondent cites,[23] there is no reason to believe that counsel's decision was even in error, much less outside the range of professionally competent assistance. The reported statement potentially revealed a contradiction in the testimony of a prosecution witness because the witness, after telling the police that only Peralta had attacked Infante, inconsistently testified before the grand jury that others were involved in punching and kicking Infante. (Answer in Opp'n Ex. K at 8.) Choosing not to object to that statement easily could have been competent trial strategy, as the attorney may have wanted to permit a prosecution witness to impeach himself, and in any event may have wanted to avoid drawing attention to the fact that witness had consistently identified Peralta as an assailant.[24] Moreover, even

---

[23] In opposing Peralta's coram nobis application, the State argued, "There is no . . . merit to Peralta's complaint that his trial attorney did not object to the introduction of hearsay testimony by a police officer as to what Angel Cid had told him -- that only Peralta kicked and punched Infante. . . . [T]his statement was inconsistent with what Cid testified at trial about Peralta's participation in the beating." (Answer in Opp'n Ex. K at 8.)

[24] We note that Race, in his cross-examination, did impeach Cid with a number of inconsistencies between his grand jury testimony and his trial testimony, presumably in an effort to discredit all of his testimony. (See Tr. 198-99,202-03.)

if Peralta could prove that the decision was an error outside the range of competent assistance, there is no suggestion by Peralta that it affected the outcome of the trial. Many other witnesses testified that a number of men in addition to Peralta had been involved in the assault, and the judge found that Santos and Peralta had shared the intent to seriously injure Infante. (See V. Tr. 2-3.) Moreover, if Peralta alone had been the assailant, he would still have been convicted; indeed, the conviction would likely have been even more certain, as the judge would not have had to decide the issue of shared intent. Peralta offers no reason, beyond the inference that he acted alone, for contesting the introduction of this evidence.

Petitioner similarly provides no detail on how his attorney was "complaisant" at his pretrial hearing. In contrast, the State's brief opposing the first coram nobis application responded that in that hearing Race had "challenged the prosecution's handling of Rosario material and what in his opinion appeared to be a haphazard organization of the material provided him. . . . [and] also closely cross-examined the police officers who testified." (Answer in Opp'n Ex. K at 7.) Without any specific assertions to the contrary from the petitioner, there is no basis in the record to find that counsel behaved improperly, much less that any such behavior prejudiced Peralta.

To the extent that Peralta claims ineffective assistance of counsel based on his attorney's interference with his right to testify, his claim also fails on the merits. While the right to testify is well-established and cannot be waived by counsel, "a 'barebones assertion' that [a petitioner's] attorney told him not to testify in his own defense, even if that assertion is made under oath, has been held to be insufficient to justify . . . action on a petitioner's claim that his right to testify in his own defense was denied him." Hammouda v. United States, 2006 WL 941759, at *5 (E.D.N.Y. Apr. 10, 2006) (internal quotation marks omitted) (quoting Scire v. United States, 1997 WL 138991, at *11 (E.D.N.Y. Mar. 24, 1997)); see United States v. Castillo, 14 F.3d 802, 805 (2d Cir. 1994) (quoting Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991) ("[I]n a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving and none-too-plausible statement that his lawyer . . . forbade him to take the stand")). In this case, petitioner does not even allege as much. He merely says that he did not testify and that there was no good reason for this. He never makes it clear whether Race told him not to testify or, if not, what the circumstances may have been, and he offers no insight as to what he would have testified to, or how such testimony would have helped his case. Indeed, when Judge Sudolnik asked Race during the trial whether he had informed his client that

he had the right to testify, Race responded strongly in the affirmative, saying that they "went at it many hours." (Tr. 214-15.) Without any further information, we cannot find that Peralta was denied effective assistance of counsel on appeal for his appellate counsel's failure to raise this issue.

The proposed claim premised on trial counsel's decision not to introduce certain "exculpatory" pieces of evidence also fails on its merits. When assessing counsel performance, a court must presume that "under the circumstances, the challenged action might be considered sound trial strategy" and "afford[] counsel a 'strong presumption' of competence." Torres, 2006 WL 1230328, at *13 (internal quotation marks and citations omitted). The choice whether to introduce a particular piece of evidence "is a question of trial strategy which courts will practically never second-guess," particularly "where Petitioner provides absolutely no details to substantiate [his] claim" and prejudice cannot therefore be established. Hammouda, 2006 WL 941759, at *5. The failure to introduce the forensic report regarding Peralta's sneakers does not fall outside the bounds of professionally competent representation. As the State noted in its opposition to the coram nobis application, nothing confirmed that these were the sneakers that Peralta was wearing at the time of the incident, and since Peralta was arrested two months after the incident, he could have cleaned

them even if they were the shoes he had worn. (Answer in Opp'n Ex. K at 8.)

As for the failure to present evidence of negligence, Peralta offers no facts, either from within the record or from without, that either describes the so-called negligence or suggests the viability of such evidence.[25] Peralta also fails to connect this argument with a theory as to why its introduction would have helped his case, though presumably the purpose would be to challenge causation. Counsel may well have decided that the evidence to which petitioner refers here was too weak to introduce, and without an explanation from petitioner, we cannot find that it would have made a difference at trial. Thus, counsel's failure to present evidence supporting the theory that medical negligence caused Infante's death, rather than plaintiff's actions, cannot be found to be outside the range of professionally competent assistance, nor can it be found to have prejudiced the defense.

---

[25] In supporting his assertion that "the victim expired by medical negligence," petitioner refers in his petition only to Infante's death certificate, reproduced in respondent's answer and appendix at Exhibit B. The certificate gives the cause of death as "complications of blunt impact of head with intracerebral hemorrhage" and states, in the field entitled "how injury occurred," that Infante was "struck in the head by other person(s)." The fact that the cause of death is complications of an injury, without more, by no means implies that Infante's care was negligent in any way.

Peralta's argument that his trial counsel failed to present a
defense also fails. Trial counsel may effectively represent a
defendant either by challenging the prosecution's evidence on each
element of a crime or by presenting an affirmative defense. <u>See</u>
<u>Mason v. United States</u>, 2006 WL 2168971, at *3 (N.D.N.Y. July 29,
2006) ("It must be borne in mind that the government has the
obligation to prove each element of the crime beyond a reasonable
doubt. It frequently is sound trial strategy to leave the
government to its proof and not present witnesses or otherwise
attach each and every element of the crimes charged.") Particularly
because petitioner suggests no specific defense that counsel should
have presented, we cannot find that counsel's actions were outside
the bounds of professionally competent assistance or that this
decision prejudiced the defense. We further note that nothing in
the record suggests that any particular defense was available or
was likely to have been more effective than putting the State to
its proof.

Finally, Peralta's conclusory and unsupported statements
regarding his appellate attorney's failure to criticize his trial
counsel's knowledge of criminal law and procedure, inadequacy of
preparation and failure to protect petitioner from prejudicial,
speculative and false testimony do not support an argument for
ineffective assistance. To the extent that petitioner's claim

broadly states that his counsel did not possess adequate knowledge of criminal law and procedure, we note merely that an examination of the record illustrates that his highly-qualified counsel displayed substantial knowledge of the law and engaged in vigorous advocacy on his behalf. Indeed, the fact that Peralta was acquitted of two of the three counts of the indictment suggests that his attorney represented him quite ably. Moreover, to the extent that we take Peralta's statement about failure to protect him as a challenge to counsel's cross-examination techniques, this argument fails on the merits as well. "Ineffective assistance of counsel claims based on inadequate cross-examination are strongly discouraged." Fabian v. United States, 2007 WL 2480164, at *9 (E.D.N.Y. Aug. 28, 2007). This is considered a highly strategic aspect of trial representation, and, moreover, a review of the record suggests no inadequacy of Peralta's counsel in that regard. (See, e.g., Tr. 78-81, 100, 119, 121-26.)

The failure of counsel to make a frivolous argument on appeal is insufficient to support a claim for ineffective assistance of counsel. See Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992). As we cannot find a basis for an ineffective-assistance claim in light of trial counsel's representation, we similarly cannot find appellate counsel ineffective for failing to raise such a claim.

Thus, we recommend that petitioner's request to amend his petition to add an ineffective-assistance claim based on the failure of appellate counsel to raise issues related to the performance of trial counsel be denied, as the allegations are meritless, thereby rendering the proposed amendment futile.


    2. <u>Futility of Petitioner's Claims of "Abandonment" by Appellate Counsel</u>


Peralta also claims that his appellate counsel "abandoned" him by failing to pursue his application for leave to appeal. As an initial matter, petitioner had no constitutional right to counsel on his application for leave to appeal, and therefore appellate counsel cannot be said to have been ineffective for failing to file that claim. <u>See</u> <u>Hernandez v. Greiner</u>, 414 F.3d 266, 269-70 (2d Cir. 2005) (citing <u>Ross v. Moffitt</u>, 417 U.S. 600, 610-12 (1974) for the proposition that "there is no constitutional right to counsel on a discretionary appeal to a state's highest court," and also noting that since there is no such right, an ineffective-assistance-of-counsel claim based on it will fail). To the extent that petitioner asserts that counsel misrepresented the retainer agreement, this claim presents no constitutional issue and therefore is not cognizable on habeas review. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws,

or treaties of the United States.").

Thus, we recommend that petitioner's proposal to amend his petition to add a new version of his ineffective-assistance claim on the ground that his appellate attorney abandoned him on appeal be denied as futile as well as untimely.

Peralta further asserts that counsel abandoned him by not providing him with trial transcripts with which to pursue his collateral challenges to his conviction. This claim cannot succeed. First, the facts as stated by petitioner in his application do not suggest that the attorney's actions were outside the bounds of professionally competent assistance. Peralta stated in his <u>coram</u> <u>nobis</u> application that Race notified him that he had turned over all documents in his possession to Peralta's sister, and he further referred Peralta to the court if he still needed the transcripts for his direct appeal. (Answer in Opp'n Ex. J at 7 (¶ 19).) Moreover, Peralta cannot prove prejudice, as he (a) could have obtained the transcripts from the State, either through an <u>in</u> <u>forma</u> <u>pauperis</u> application to the court or by paying for them if he did not have <u>in</u> <u>forma</u> <u>pauperis</u> standing; and (b) seemed to have no difficulty raising a number of claims without the benefit of these

transcripts.[26]


Thus, we recommend that the motion to amend to add claims that counsel abandoned petitioner -- both by failing to pursue the discretionary appeal and by failing to provide trial transcripts -- be denied as futile.


D. Petitioner's Remaining Claim: Sufficiency of the Evidence


Peralta's remaining claim, asserted in his timely petition and not withdrawn, challenges the sufficiency of the evidence used to convict him. He argues that the court used circumstantial evidence to arrive at the conclusion that he had the requisite shared intent under the manslaughter statute, and that the circumstantial

---

[26] Courts have also found that just as petitioner has no right to counsel on a discretionary appeal, see p. 45, supra, counsel has no duty to assist him at that juncture and therefore is not required to provide trial transcripts. See, e.g., Dominguez v. Carter, 2006 WL 2345125, at *8 (S.D. Ohio Aug. 10, 2006). By this logic, counsel was under no obligation to locate and deliver trial transcripts to Peralta after his representation was concluded. This is the argument that the State posed in its brief in opposition to the application for coram nobis. (See Answer in Opp'n Ex. K at 9.) The State also referred to the record of correspondence between Race and Peralta, also cited in Peralta's application, which suggested that the attorney no longer had the transcripts. See id.

evidence was insufficient to support his conviction.[27] Respondent concedes in his opposition to petitioner's motion to amend that this claim is procedurally exhausted.

In challenging the sufficiency of the evidence, Peralta bears "a very heavy burden." <u>United States v. Jespersen</u>, 65 F.3d 993, 998 (2d Cir. 1995). His conviction must be upheld if, after reviewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could find proof beyond a reasonable doubt." <u>Ponnapula v. Spitzer</u>, 297 F.3d 172, 179 (2d Cir. 2002); <u>Jespersen</u>, 65 F.3d at 998. Such proof can be in the form of circumstantial evidence. <u>See</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 324-25 (1979) (circumstantial evidence used to reject a sufficiency-of-the-evidence claim); <u>Dixon v. Miller</u>, 293 F.3d 74, 81 (2d Cir. 2002) (in analyzing an evidentiary-sufficiency claim, courts must uphold a jury verdict even if based entirely on circumstantial evidence).

Under New York law, a person is guilty of first-degree manslaughter when, "with intent to cause serious physical injury to another person, he causes the death of such person." N.Y. Penal Law

---

[27] As respondent correctly notes, a weight-of-the-evidence argument is not cognizable on habeas review. <u>See</u>, <u>e.g.</u>, <u>Garbez v. Greiner</u>, 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002).

§ 125.20[1]; <u>Vargas-Sarmiento v. U.S. Dep't of Justice</u>, 448 F.3d 159, 163 (2d Cir. 2006). Peralta's conviction for first-degree manslaughter ultimately rested on a theory of accomplice liability, as no one suggested that he had inflicted the fatal blow. <u>Peralta</u>, 1 A.D.3d at 16, 767 N.Y.S.2d at 71. For Peralta to be convicted of manslaughter on such a theory, he would have to have shared Santos's intent to cause Infante serious physical injury. N.Y. Penal Law § 20.00; <u>Hill v. Senkowski</u>, 409 F. Supp. 2d 222, 230 (W.D.N.Y. 2006).

The trial court concluded that Peralta was guilty on the basis of the following facts: (1) that Peralta had punched Infante and then watched Santos hit him over the head with a bottle; (2) that Peralta had proceeded, once Infante was down, to kick Infante in the face and chest; and (3) that Peralta and his friend had then proceeded to walk away from Infante without calling for help, despite the fact that he appeared to be seriously injured. (V. Tr. 2-3); <u>see</u> <u>also</u> pp. 4-6, <u>supra</u> (describing the evidence presented that supported the court's findings, including eyewitness testimony). Shared intent can be inferred from the circumstances, including in the situation of a group assault on an individual. <u>See</u>, <u>e.g.</u>, <u>People v. Modesto</u>, 262 A.D.2d 586, 586, 693 N.Y.S.2d 61, 61-62 (2d Dep't 1999) (finding that evidence supporting a conviction for first-degree manslaughter was sufficient where the

49

defendant was one of a group of gang members who fatally assaulted an individual and then stabbed him with knives and ice picks, even though the defendant himself did not use a knife or an ice pick). Petitioner's behavior supports an inference that he intended to cause such harm, as the judge noted.

Peralta's argument that he did not intend to cause the victim's death is unavailing. Intent to cause death is not an element of first-degree manslaughter. The State need only show that there was an intent to cause serious physical injury, <u>see</u> <u>People v. Tyler</u>, 43 A.D.3d 633, 634, 841 N.Y.S.2d 193, 194-95 (4th Dep't 2007) (distinguishing first-degree manslaughter from intentional murder), and that death resulted from the inflicted injury. <u>See</u> <u>People v. Brown</u>, 307 A.D.2d 645, 645-46, 763 N.Y.S.2d 695, 697 (3d Dep't 2003) (listing the elements of first-degree manslaughter, including death as a result of the injury). For reasons noted, the proof in this case was ample to establish both elements, and the judge explicitly found, based on the facts presented, that petitioner had the required intent.

<u>CONCLUSION</u>

For the reasons noted, we recommend that the writ be denied

50

and that the petition be dismissed. We also recommend denial of a certificate of appeal.


Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Deborah A. Batts, Room 2510, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985), reh'g denied, 474 U.S. 1111 (1986); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**Dated: New York, New York**
**April 18, 2008**

MICHAEL H. DOLINGER
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been mailed
today to:

Mr. Oscar Peralta
02-A-3033
Mid-Orange County Correctional Facility
900 Kings Highway
Warwick, NY 10990-0900

Tracy Lynn Conn, Esq.
District Attorney, New York County
One Hogan Place
New York, New York 10011